413 So.2d 988 (1982)
Danny J. BREAUX
v.
LOUISIANA FARM BUREAU MUTUAL INSURANCE COMPANY.
No. 14695.
Court of Appeal of Louisiana, First Circuit.
April 18, 1982.
Rehearing Denied May 25, 1982.
*989 Joel Hanberry, Cut Off, for plaintiff-appellant Danny J. Breaux.
Ralph R. Alexis, III, New Orleans, for defendant-appellee Louisiana Farm Bureau Mut. Ins. Co.
Before COVINGTON, COLE and WATKINS, JJ.
COLE, Judge.
The main issue presented here is whether or not plaintiff can "stack" the uninsured motorist coverage provided by different insurance companies.
The facts are not disputed. Plaintiff Danny Breaux is the owner of a Suzuki motorcycle and a 1977 Pontiac Grand Prix automobile. The motorcycle was insured by Home Indemnity Company (Home) with liability and uninsured motorist (UM) limits of $10,000. The automobile was insured by Louisiana Farm Bureau Mutual Insurance Company (Farm Bureau) with medical payment limits of $5,000 per person and UM coverage of $50,000 per person. Breaux was injured on June 7, 1979, when he was riding the motorcycle and collided with an automobile. The individual driving the automobile was insured by State Farm Mutual Automobile Insurance Company (State Farm) with a policy providing $10,000 liability coverage. Breaux settled with State Farm and Home (under the UM provisions) for the policy limits of each. He then sought to recover from Farm Bureau for the medical payment and UM limits. Farm Bureau resisted payment and plaintiff filed suit.
Farm Bureau filed a motion for summary judgment alleging under La.R.S. 22:1406D(1)(c)[1] Breaux was not allowed to stack his UM coverages and a policy exclusion prevented him from recovering under *990 the medical payment section. The trial court agreed and granted the summary judgment in favor of Farm Bureau and against Breaux. Breaux then filed this appeal. We affirm.
There are four matters to be determined in deciding whether or not appellant is entitled to a trial on the merits. First, is the Farm Bureau policy, issued originally prior to the effective date of the Act, subject to the stacking prohibition in the Act? Second, if the Act is applicable, does it prevent stacking where the policies are issued by different insurance companies? Third, even if plaintiff cannot stack the coverages, may he choose to make a claim under the policy with the higher limits? Fourth, does the policy in question exclude medical payment coverage to a blameless insured who is injured when struck by an automobile if at such time he is driving an owned vehicle not described in the policy?
Appellant argues because his policy was issued originally on May 30, 1977, and the Act did not become effective until September 9, 1977, it is not affected by the Act. We reject this argument.
The evidence shows the policy period was defined as follows:
"POLICY PERIOD: The term of the policy shall be from the effective date 05/30/77 to 07/13/77 ... and for such terms of 6 calendar months each thereafter as the required renewal premium is paid by the Insured on or before the expiration of the current term."
There is no question that plaintiff continued to pay his premiums so that the policy was renewed up to and beyond the time of the accident on June 7, 1979. He contends the renewal merely extended the life of the original policy and that the terms of the original policy cannot be varied by legislative act.
This issue was present in Courville v. State Farm Mut. Auto. Ins. Co., 393 So.2d 703 (La.1981). In Courville, a plaintiff was attempting to recover under the UM provisions of two State Farm policies. The initial issue was whether or not the policies were covered by the Act in that both policies were issued originally prior to the effective date of the Act and both had been renewed after the effective date. The Supreme Court held the initial right to insurance was established for a six month period only and each subsequent renewal was a separate contract. Since the policies were renewed after the effective date of the Act the court ruled the Act applied to the policies in effect at the time of the accident. Therefore, we too conclude the anti-stacking statute applies to the Farm Bureau policy in the present case.
Plaintiff attempts to distinguish Courville, as regards the applicability of the Act, upon the basis that he had an absolute right to continue his insurance in effect for successive periods of six months, whereas in Courville this was not the case. We do not have the Courville policies before us but, in any event, the insurer in this case clearly had the right not to renew the coverage. This is provided not only by the policy language but by La.R.S. 22:636.1. The policy language (pp. 21-22 of the policy, dealing with cancellation and renewal) provides: "... nothing herein shall obligate the Company to renew or continue this policy beyond the expiration of any annual period commencing with its original effective date...." Further, the policy provides: "If this policy is written for a policy period of less than one year, the Company agrees that it will not refuse to renew except as of the expiration of a policy period which coincides with the end of an annual period commencing with its original effective date." The policy language obviously tracks the right granted by La.R.S. 22:636.1. Thus, it is clear plaintiff in this case was not given an absolute right to continue his insurance in effect beyond the initial six months and for successive periods of six months each, thereby maintaining a continuous policy which existed prior to the Act. Courville, in this respect, cannot be distinguished. The Act applies to the Farm Bureau policy.
The second issue is whether or not the Act prohibits plaintiff from stacking UM coverage provided by two different insurance companies.
*991 The Act, as amended in 1977, states clearly stacking is prohibited, subject to a limited exception (which does not concern us here) when the insured is injured while occupying a nonowned vehicle. The pertinent parts of the text read as follows:
"D. The following provisions shall govern the issuance of uninsured motorist coverage in this state."
* * * * * *
"(1)(c) If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subsection D(1), then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of insurance and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; provided, however, that with respect to other insurance available, the policy of insurance or endorsement shall provide the following:
"With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, the following priorities of recovery under uninsured motorist coverage shall apply:
"(i) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
"(ii) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant." (Emphasis added.)
Plaintiff argues the prohibition against stacking applies only when the coverages are supplied by the same insurance company. The jurisprudence gives us little guidance on this issue. Although counsel for each side cites several cases, we have found none to be exactly on point. Defendant cites several cases which state the only exception to the anti-stacking prohibition is the "nonowned" exception provided in subpart (c) of the Act. See Courville, supra, and Nall v. State Farm Mutual Auto. Ins. Co., 406 So.2d 216 (La.1981), rehearing denied 1981, but neither deal directly with the issue of stacking when two different insurance companies are involved.
Plaintiff cites several cases for the proposition that stacking is allowed when the policies are issued by different insurance companies but we find none of them to be good authority for that proposition.
In Branch v. O'Brien, 396 So.2d 1372 (La. App. 2d Cir. 1981), writ denied 1981, the plaintiff was an insured under four separate State Farm policies insuring four cars. Plaintiff was driving car A at the time of the accident. The policies on cars A, B and C had UM limits of $10,000 while the policy on car D had a limit of $100,000. The court disallowed any stacking of the four policies, due to the clear prohibition in the Act, but allowed plaintiff to benefit from the policy with the highest limits of coverage. We find no correlation between Branch and the stacking issue in the present case because Branch involved only one insurer. Branch is of significance on a subsequent issue and will be discussed below.
In Hebert v. Breaux, 398 So.2d 1299 (La. App. 3d Cir. 1981), writ denied 1981, plaintiff had collected UM benefits from State Farm (the insurer of her own car), and then sought recovery under UM coverages provided by Bellefonte Insurance Company on two cars owned by her father. Oddly enough, Bellefonte did not resist payment on the basis that plaintiff was attempting to stack her State Farm UM with the Bellefonte UM, but claimed simply plaintiff was not allowed to collect under both Bellefonte coverages because to do so would be stacking in violation of the Act. Although the Bellefonte policy was dated prior to the effective date of the Act, the accident occurred after the effective date. The court held that the policy provision preventing stacking was in agreement with public policy *992 at the time of the accident, was valid, and, therefore, plaintiff could not stack the Bellefonte coverages.
We do not see the case as strong authority for the proposition that stacking is allowed when the coverage is by different insurance companies because that issue was never addressed. We note however, even if that issue had been presented therein, it should have had no bearing on the plaintiff's right to stack. The amendment to the Act affected substantive rights and should not be applied retroactively. Cutrer v. Brumfield, 372 So.2d 648 (La.App. 1st Cir. 1979). The policy in question was issued prior to the effective date of the Act and therefore was not affected by the Act. Prior to the amendment in 1977, stacking was allowed. Therefore, we would agree plaintiff was entitled to recover from both insurance companies.
In another case cited by plaintiff, Earl v. Commercial U. Ins. Co., 391 So.2d 934 (La. App. 2d Cir. 1980), the accident occurred prior to the effective date of the Act, therefore the case has no bearing on the stacking issue.
Although we find the jurisprudence of little help, we conclude stacking is prohibited even where the UM coverage is provided by different insurance companies. The language of the Act is clear. The stacking prohibition applies any time the insured "has insurance available to him under more than one uninsured motorist coverage provision or policy...." Plaintiff has UM coverage available under more than one policy. There is no language indicating the policies must be provided by one insurance company in order to trigger the prohibition. The basic rule of interpreting laws is found in La.Civ.Code art. 13.
"When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit."
The question of the intent of the anti-stacking provisions was presented in Courville, supra, where a plaintiff attempted to stack two UM policies provided by one insurance company. The plaintiff had been driving his father's car (insured by State Farm) at the time of the accident. His father had another State Farm policy on a second car. Each policy had UM limits of $10,000 and plaintiff was an insured under both policies.
Plaintiff alleged he was an occupant of an automobile not owned by him and therefore was entitled to stack the two UM policies under the exception created in subsection (c) of the Act. The Court of Appeal, 386 So.2d 176 (La.App. 3d Cir. 1980), admitted a literal reading of the Act would include plaintiff in the exception because he was in fact "an occupant on a nonowned car." However, it felt the Act did not intend to allow the exception when the occupant of the nonowned car was an insured under the policy on the car and also an insured under the other policy. The court felt the exception was intended to apply to situations where the occupant sought additional UM coverage from a source other than the owner of the insured vehicle which he was occupying. They held plaintiff did not fit the exception and could not stack. The Supreme Court reversed on that issue and stated, at page 705:
"The Third Circuit Court of Appeal felt the Act was ambiguous as applied to these facts; therefore, they endeavored to ascertain the intent of the legislature. We do not deem such a journey necessary."
The court then cited Civil Code art. 13 and continued as follows:
"The letter of the Act which allows Joseph A. Courville, Jr., to stack these two policies may not be disregarded simply because of some notion that the legislature's spirit behind the above statute is to prevent stacking in situations such as this. Of course, if that is the true spirit, then the legislature should amend the Act by providing in the second paragraph that an insured may not stack even if he is an occupant and a nonowner of the vehicle in which he is injured. For the present, a strict reading of the entire Act allows this plaintiff to recover."
*993 We agree completely with these comments. In the present case the words of the legislature are clear and we decline to go behind the words and search for the intention of the redactors. Certainly if the intention was to prohibit stacking only in situations involving policies issued by one insurance company, the legislature should amend the Act to make that limitation clear. But for the present, we will interpret the words according to their usual meaning. La.Civ. Code art. 14.[2] Plaintiff has insurance available to him under more than one policy, therefore, stacking is prevented under the Act.
Plaintiff argues alternatively if he is not allowed to stack the UM coverages he is at least entitled to choose the policy with the higher limits and recover therefrom. We have already discussed the facts of Branch v. O'Brien, supra. There the court allowed the plaintiff to choose from four policies the one with the highest UM coverage, even though the described automobile on that policy was not the one she was driving at the time of the accident. State Farm, the UM carrier, resisted paying the higher limits based on an exclusion which stated the policy did not apply to "an insured while occupying an automobile (other than an insured automobile) owned by the named insured...." The court held this exclusion was null in that it violated public policy.[3]
The court noted the Act requires the insurer to provide UM coverage and remarked as follows:
"Uninsured motorist coverage does not depend on use of a listed insured automobile, but is to protect the insured from damage caused by a negligent uninsured motorist regardless of whether the insured is occupying an automobile listed in the policy, another automobile owned or unowned, or is not occupying an automobile at all. Barbin v. United States Fidelity & Guaranty Company, 315 So.2d 754 (La.1975); Graham v. American Casualty Company of Reading, Pennsylvania, 261 La. 85, 259 So.2d 22 (1972)...." (Other citations omitted.)
The court concluded the amendments to the Act prohibit stacking of UM coverage but noted the amendment did not change the fact that each policy provides coverage to the full amount of each policy's limits.
"Nothing in the amendment makes coverage under any one of the policies exclusive of that provided by the others. Nothing in the amendment says the policy or coverage on the vehicle in which the injured party was an occupant is the only policy which provides coverage. In fact, the language of the statute as amended is to the contrary; it recognizes that more than one policy or coverage may be available to the insured, and prohibits `stacking' in that instance. It does not purport to regulate which policy is primary or exclusive, except in the case of an insured occupying a nonowned automobile, which is not the situation here. Since each policy provides coverage, there is no statutory reason why plaintiffs should not be able to select the policy under which they seek recovery, even though they are prohibited from recovering the combined full limits of all available policies."
Within the factual context of a motor vehicle owned by the injured party and listed in only one liability insurance policy, we deem the reasoning of Branch to be unsound. Where there is more than one liability policy with UM coverage but only one such policy listing the involved vehicle, we conclude the 1977 amendment to the Act does make the coverage under that policy exclusive of the other coverage. We think *994 the amendment clearly provides the policy or coverage on the vehicle in which the owner was injured is the only policy with usable UM coverage. In effect, that policy becomes exclusive.
R.S. 22:1406 D (1)(a) provides:
"No automobile liability insurance covering liability arising out of the ownership, maintenance or use of any motor vehicle shall be ... issued ... unless coverage is provided therein ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury...." (Emphasis added.)
Obviously, the thrust of the statute is oriented toward and its foundation rests upon the issuance of liability coverage on a particular motor vehicle. Sub-section (c) then states:
"If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subsection D(1), then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of insurance and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy...." (Emphasis added.)
Thus the limitation against "stacking" is first made dependent upon the issuance of a liability insurance policy listing a particular motor vehicle. Here, plaintiff Danny Breaux had such a policy on his Suzuki motorcycle and, once issued, the limitation against "stacking" or increasing the limits of UM coverage in that policy became viable. The entire scheme of statutory UM coverage is in terms of the insured's limits arising from a liability policy on a particular vehicle, not in terms of the aggregate or single limits one or more insurers may have otherwise provided. We apply the clear language of the Act and deny plaintiff access to the higher limits provided in the policy listing only the Pontiac automobile.[4]
The final matter to be resolved is whether or not plaintiff is entitled to recover under the medical payment provisions of the Farm Bureau policy. The policy provides for $5,000 medical payment for the named insured. The policy reads as follows:
"PART II. MEDICAL PAYMENTS Coverage C
"To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services to or for:
"DIVISION 1the named insured and, while residents of the same household, his spouse and any relative of either, who sustains bodily injury, caused by accident, while in or upon, entering or alighting from, or through being struck by any automobile...."
State Farm rejects payment based on a general exclusion which states the policy does not apply:
"(g) under Division 1 of Coverage C to bodily injury to the insured, his spouse, or members of his household, sustained while in or upon or while entering into or alighting from an automobile owned by the insured, his spouse, or members of his household, except the one described in the declarations;"
Plaintiff cites Landry v. State Farm Mutual Automobile Ins. Co., 298 So.2d 291 (La. App. 1st Cir. 1974), writ refused 1974, in support of their argument that they are entitled to recover under division I of the medical payments provision because the named insured was "struck by an automobile." We find the facts of Landry make it distinguishable from the present case in that the policy in Landry apparently did not *995 contain the general exclusion found in the State Farm policy. The court specifically stated:
"We can find no provision excluding coverage while the insured is driving an owned vehicle not described in the policy when he has been injured through being struck by an automobile or by a trailer of any type."
To the contrary, in the instant case we have precise policy language stating plaintiff is not entitled to the medical payments so long as he was in an automobile owned by the insured but not described in the declarations.
We find Branch, supra, applicable to this issue. There the plaintiffs wanted to stack the medical payment coverages provided by the four policies. The court concluded plaintiff was not allowed to stack but was limited to recovering the medical payments only from the policy covering the car involved in the accident. The policy there provided for medical payments to the insured when in the owned automobile (defined as the described automobile) or while in a nonowned automobile. The court noted that unlike the similar UM exclusion issue, there was "no statutory or policy requirement relating to medical payment coverage which overrides or negates the express provisions of the policies, which should be given effect as written." We agree and hold the exclusion in the Farm Bureau policy is valid, therefore plaintiff is not entitled to recover for medical payments. See also Crenwelge v. State Farm Mutual Automobile Ins. Co., 277 So.2d 155 (La.App. 3d Cir. 1973) and Thomas v. Nelson, 295 So.2d 847 (La.App. 1st Cir. 1974).
For these reasons, the judgment of the trial court is affirmed. Costs are to be paid by appellant.
AFFIRMED.
NOTES
[1] All further citations to this statute, as amended by Act 623 of 1977, will refer simply to the "Act."
[2] Art. 14. "The words of a law are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words."
[3] The Farm Bureau policy in the present case contains the identical exclusion. Insofar as the basic question of coverage is concerned, we agree the exclusion is null. However, we do not believe it is null insofar as it might preclude "stacking" in instances such as the one now before us. To that extent, we believe the exclusion is in accord with the Act, as amended.
[4] While we have found it unnecessary to discuss the intent of the legislature in enacting the 1977 amendment to the Act, we do note a close scrutiny of its legislative history does not produce a different result.